UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM O'DRISCOLL,

    Plaintiff,

v.                                    Case No. 8:22-cv-1984-VMC-JSS

ARBOR GROVE CONDOMINIUM
ASSOCIATION, INC., and
RESOURCE PROPERTY MANAGEMENT,
INC.,

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendants Arbor Grove Condominium Association, Inc. and Resource Property Management, Inc.'s Motion for Partial Summary Judgment (Doc. # 44), filed on August 31, 2023. Plaintiff William O'Driscoll responded on September 14, 2023. (Doc. # 45). For the reasons that follow, the Motion is granted in part and denied in part.

**I.**   **Background**

On August 29, 2022, William O'Driscoll initiated this action against the Arbor Grove Condominium Association, Inc. ("Arbor Grove") and Resource Property Management, Inc. ("RPM") (Doc. # 1). O'Driscoll filed an amended complaint on

1

November 14, 2022. (Doc. # 9). The amended complaint asserts violations of the Florida Consumer Collections Practices Act ("FCCPA") by both defendants and violations of the Fair Debt Collection Practices Act ("FDCPA") by RPM. (Id.). The parties proceeded through discovery, which revealed the following.[1]

### A.     The Arbor Grove Community and O'Driscoll's Property

O'Driscoll owns a condominium unit within the Arbor Grove community. (Doc. # 9 at ¶¶ 6, 29). This property is

---

[1] The Court entered an Order on Motions for Summary Judgment on February 27, 2023. (Doc. # 30). This order states that "[e]ach response in opposition to a motion for summary judgment must include a section titled 'Response to Statement of Material Facts.' The opposing party's response must mirror the statement of material facts [in the motion for partial summary judgment] by admitting and/or denying each of the moving party's assertions in matching numbered paragraphs."(Id. at 2). O'Driscoll's response does not include a section admitting and/or denying each of Defendants' assertions in their statement of material facts. (Doc. # 45). Therefore, the Court's analysis is based on the additional facts included in O'Driscoll's response and the strength of the evidence cited by Defendants in support of their factual assertions. The Court notes that, "[i]n deciding a motion for summary judgment, the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided record evidence supports the moving party's statement." (Id. at 2-3). "When resolving a motion for summary judgment, the Court has no independent duty to search and consider any part of the record not otherwise referenced and pinpoint cited in the statement of material facts and response thereto." (Id. at 3).

subject to Arbor Grove's Declaration, Bylaws, and other governing documents. (<u>Id.</u> at ¶ 30). Arbor Grove "has the right to fine [residents], upon reasonable notice and an opportunity to be heard." (<u>Id.</u> at ¶ 32). Specifically, Arbor Grove's Declaration provides:

> In the event a Unit Owner or occupant . . . fails to observe and perform all of the provisions of the Declaration, the By-Laws, the Articles of Incorporation of the Association, applicable rules and regulations, or any other agreement, document or instrument affecting the Condominium Property in the manner required, the Association shall have the right to proceed in a court of equity to require performance and/or compliance, to impose any applicable fines, to sue in a court of law for damages, and to charge the Unit Owner for the sums necessary to do whatever work is required to put the Unit Owner or Unit in compliance.

(Doc. # 44-1 at Ex. A at 30).

### B.   Fines for Violations of Arbor Grove Community Rules

Arbor Grove and RPM sent O'Driscoll several notices regarding his conduct at his property within the Arbor Grove community. (<u>Id.</u> at Ex. B). This correspondence informed O'Driscoll that he had violated Arbor Grove's governing documents and indicated that he would be subject to fines for this conduct. (<u>Id.</u>).

### 1.   The $300 Fine

On September 13, 2021, Arbor Grove, through RPM, sent O'Driscoll correspondence informing him that he had violated Arbor Grove's governing documents through his language and behavior, and stating that a hearing before the Arbor Grove Compliance Committee would occur on October 5, 2021, to determine whether to impose a fine for the violations. (Id. at 1). The correspondence also indicated that, if O'Driscoll could not attend the hearing, he could submit a written statement to the committee. (Id.). The hearing was held on October 5, 2021, as noticed, and the committee voted to confirm the fines as levied by the Board of Arbor Grove. (Id. at Ex. C). O'Driscoll did not attend. (Id.). A $300 fine was added to O'Driscoll's account on October 1, 2021. (Id. at Ex. D at 17:18-21).

O'Driscoll testified that he recalled logging into his online account with Arbor Grove on October 1, 2021, and viewing that the account listed a $300 fine. (Id. at 45:19-49:12). He did not subsequently contact anyone at RPM about the fine because he knew it was "an illegal fine" and, therefore, "didn't care." (Id. at 49:17-50:4). He referred

the matter to his attorney. (Id. at 50:1-10). He testified
that he did not know why the $300 fine was added to his
account. (Id. at 27:2-4).

O'Driscoll testified in his deposition he never received
any mail related to the $300 fine. (Id. at 18:1-7, 19:4-7,
19:14-21:10). Despite referencing the September 13, 2021,
letter in his amended complaint (Doc. # 9 at ¶ 35), O'Driscoll
testified that he did not receive any correspondence in
September 2021 advising that Arbor Grove might refer
information about O'Driscoll's behavior to a fining
committee. (Doc. # 44-1 at Ex. D at 20:9-18). More generally,
O'Driscoll testified that he did not receive any
correspondence prior to September 13, 2021, regarding his
behavior or language within the community. (Id. at 28:7-10).

Additionally, O'Driscoll did not recall several later
correspondences regarding rule violations, including
correspondence dated September 21, 2021, and October 6, 2021.
(Id. at 28:19-23, 33:10-15). He also provided somewhat
conflicting testimony regarding whether he received a letter
dated October 20, 2021. He first testified that he did not
recall receiving it. (Id. at 26:15-27:1). Later in the same

deposition, he appeared to affirm that he had received the letter. (Id. at 43:12-19). Yet, O'Driscoll's testimony about this letter is intertwined with a discussion of the October 1, 2021, charge to his online account with Arbor Grove, and thus may not be referencing the October 20, 2021, letter. (Id. at 43:9-49:10). He also did not recall receiving a letter dated December 21, 2021, though he assumed that he received it sometime that month. (Id. at 41:7-17).

He also testified that he had never "received any correspondence or communication[,] either a letter or an in person conference with anyone from the Board or related to RPM regarding [his] behavior or language." (Id. at 29:7-24). O'Driscoll further testified that he never attended any hearings before Arbor Grove's Compliance Committee. (Id. at 28:11-13). Additionally, he denied "ever receiv[ing] any communications advising [him] that there was a hearing either before the [C]ompliance [C]ommittee or a fining committee related to any alleged violations." (Id. at 28:14-18).

### 2.   The $200 Fine

On February 1, 2022, Arbor Grove sent O'Driscoll a notice that he had violated Arbor Grove's governing documents

through his behavior and foul language. (Id. at Ex. B at 7). Later that day, O'Driscoll instructed RPM not to "correspond with [him] again in any form relating to any matter" and to direct future correspondence to his attorney, Andrew Mallory. (Doc. # 45-1 at Ex. A). Mallory confirmed this request the following day. (Id.). According to Edward Evans, President of Arbor Grove, both Arbor Grove and RPM were aware of this communication. (Evans Depo. at 5:6-8, 31:16-32:11). Evans acknowledged that communications directly to O'Driscoll should have stopped after this date. (Id. at 33:7-11). However, he also confirmed that direct communications did continue. (Id. at 35:2-22).

Subsequently, RPM sent O'Driscoll a Notice of Non-Compliance on March 30, 2022. (Doc. # 44-1 at Ex. B at 9). The Notice indicated that the Arbor Grove Fining Committee would hold a hearing on April 20, 2022, "to determine whether to confirm or reject the [$200] fine proposed by the Board of Arbor Grove at their last Board meeting." (Id.).

On May 4, 2022, RPM sent O'Driscoll correspondence advising that the Fining Committee had confirmed the fine and that a $200 fine had been posted to his account. (Id. at 10).

7

O'Driscoll testified that he never received any correspondence in the mail related to this fine. (Id. at Ex. D at 18:21-19:3). He also specifically did not recall receiving correspondence from Arbor Grove or RPM dated February 22, 2022, March 30, 2022, or May 4, 2022. (Id. at 32:12-16, 33:2-5, 33:16-21).

### C.   **State Court Lawsuit Seeking Injunction**

Arbor Grove filed a lawsuit against O'Driscoll in state court on November 2, 2021, seeking an injunction to prevent O'Driscoll from "willfully and knowingly failing to comply with" Arbor Grove's Declaration. (Id. at Ex. G). The behavior at issue in the lawsuit included yelling; name calling, including homophobic slurs; damage to common elements; making continuous complaints; using foul language; and placing carpet pieces and plants in ways that "interfer[ed] with ingress and egress." (Id.). Arbor Grove also sought attorney's fees. (Id.).

Counsel for O'Driscoll in that case, Scott B. Tankel, filed a Notice of Appearance on May 10, 2022. (Id. at Ex. H). O'Driscoll filed an answer on August 15, 2022. (Id. at Ex.

I). O'Driscoll's answer included violations of the FCCPA and FDCPA as an affirmative defense. (Id.).

## D.   **Attorney's Fees from State Court Lawsuit Regarding Injunction**

On May 13, 2022, a $2,975 charge for "[a]ttorney's fees, per manager 2022" was applied to O'Driscoll's online account with Arbor Grove. (Doc. # 9-1 at 1, 4). In his deposition, O'Driscoll denied "ever receiv[ing] any communication [through the mail] related to attorney's fees . . . being assessed to [his] account." (Doc. # 44-1 at Ex. D at 18:13-20).

The $2,975 charge for attorney's fees was removed from O'Driscoll's account on December 31, 2022. (Id. at 54:1-19).

## E.   **Correspondence to Collect Fines and Attorney's Fees**

On May 17, 2022, RPM sent O'Driscoll a letter indicating that he had a $3,475 balance in his account. (Doc. # 45-1 at Ex. E). This balance was comprised of a $300 previous balance, a $200 fine, and $2,975 in "[a]ttorney's fees, per manager." (Id.). The letter also stated it "shall serve as the association's notice to proceed with further collection action against your property no sooner than 30 days after the

date of this letter, unless you pay the amount set forth." (Id.).

On June 17, 2022, RPM sent O'Driscoll additional correspondence. (Id. at Ex. F). This letter also sought to collect $3,475, comprised of the same costs listed in the previous letter. (Id.). It also included the same statement regarding "further collection action." (Id.).

O'Driscoll testified that he received "fourteen collection notices," believed the documents attached to his Interrogatory Answers were part of those letters received, but did not know when those letters were received other than to say he assumed "near or close to the postmark." (Doc. # 44-1 at Ex. D at 33:19-34:24). During his deposition, O'Driscoll could not recall whether he first learned of the attorney's fees through the May 17, 2022, letter. (Id. at 31:24-32:10). He also testified that RPM sent fourteen letters threatening collection of $3,475. (Id. at 21:14-18).

Evans stated that Arbor Grove was no longer corresponding with O'Driscoll directly by the date of his deposition, May 18, 2023. (Evans Depo. at 32:14-16).

F.   **Emotional Harm**

O'Driscoll experiences several mental health issues, including bipolar disorder, anxiety, depression, fatigue, and mood changes. (Doc. # 45-1 at Ex. G at 62:11-16, 63:15-22). He testified that, "prior to receiving any communications from RPM or [Arbor Grove] related to fines in October of 2021," his emotional state was "stable." (Id. at 58:21-24).

O'Driscoll also testified he never behaved improperly or used improper language with any Board member or property manager. (Id. at 30:9-13). Yet, on January 28, 2021, O'Driscoll left a voicemail for the Board of Arbor Grove that included significant foul language and name-calling regarding an employee and communications that she had sent him about his dogs. (Id. at 85:5-25). Within his deposition testimony for another case to which Arbor Grove was a party, O'Driscoll admitted receiving several letters from Arbor Grove regarding his behavior towards members of the community. (Doc. # 44-1 at Ex. L at 110:1-9). He separately acknowledged that he had been fined for his foul language. (Id. at 110:19-111:3).

O'Driscoll testified that the communications from Arbor Grove and RPM exacerbated his mental health issues, requiring

11

both different medication and higher doses. (Id. at Ex. D at 62:14-64:10). The letters also caused O'Driscoll to see Dr. Patel, his psychiatrist, more frequently. (Id. at 60:5, 113:14-23). According to O'Driscoll, he suffered from memory loss because of the medications that he is taking and from lack of sleep. (Id. at 57:9-17, 108:13-23).

Within O'Driscoll's Initial Disclosures, he indicated that "Dr. Patel is able to testify as to the stress that the above-styled case and underlying state [court] litigation has had on the Plaintiff." (Id. at Ex. E).[2] At his deposition, O'Driscoll also stated that, after October 1, 2021, he worked only about a quarter of the hours he previously did for his employer due to the impact that the fines had on him. (Id. at Ex. D at 136:13-18).

### G.   Additional Events That Caused Emotional Distress

#### 1.   Lawsuit Regarding Dog Bite

On May 23, 2022, O'Driscoll brought suit against Arbor Grove and Paul and Debra Oliver, residents within the Arbor

---

[2] While Arbor Grove and RPM indicated in their Motion that records from Dr. Patel would be "filed separately and confidentially," (Doc. # 44 at 23 n.1), these records do not appear to have been filed with the Court.

Grove community, for personal injury caused by an attack by the Olivers's dog that occurred on March 7, 2021. (Id. at Ex. J). The complaint states that the attack resulted in "bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition." (Id. at ¶¶ 33, 38).

Within the Verified Answers to Interrogatories that O'Driscoll provided in that case, he stated that he lost income, and would lose additional income, because he "was unable to maintain [his] marketing activities and [] secured far less commissions as a result." (Id. at Ex. K). He also stated that "[t]he psychological harm caused by the attack continues to interfere with [his] daily activities." (Id.). He indicated that the attack caused him to require additional medication, which caused "fatigue, nausea and digestive issues," that his anxiety got worse, and that he feared getting attacked by a dog when outside. (Id.). He also had trouble sleeping, felt "tired, depressed and [had] low

13

energy, low motivation and lack of concentration." (Id.). Elsewhere, he stated, "[m]y mental health condition was managed before the attack. After the attack, my bipolar and anxiety has increased and I have to take more medication on a daily basis as a result." (Id.). This anxiety comes in part from the scars left by the attack. (Id. at Ex. L at 84:3-6).

In O'Driscoll's deposition for the dog bite case, he testified that his "bipolar condition has been exasperated by the attack. [His] anxiety is worse. [His] depression is worse. [He] lose[s] sleep. [He] can't stay awake during the day." (Id. at 22:1-4). He stated that his bipolar medication was increased because of the attack. (Id. at 24:4-10). He also stated that he lost sleep because of the pain and because he took his dogs out only at night to avoid the Olivers's dog, and gained approximately 35 pounds. (Id. at 82:20-83:2, 85:6-8).

Yet, within O'Driscoll's deposition in the present case, he testified that in April 2021, he travelled, attended networking events, and was "a very social person." (Id. at Ex. D at 96:5-13).

14

### 2. Letters from The Concerned Residents of Arbor Grove

O'Driscoll testified he received three letters from a "vigilante group in the neighborhood calling themselves The Concerned Residents of Arbor Grove" that encouraged him to leave the community. (Id. at 77:16-20, 127:7-17). O'Driscoll believed that they came from people associated with Defendant Arbor Grove, but he could not prove it. (Id. at 129:24-130:8). One of these letters, sent in February 2020, was laced with white powder. (Id. at 77:21-22, 128:23-25); (Id. at Ex. M). O'Driscoll testified that these letters were sent to "terrorize and intimidate" him. (Id. at 132:23-133:2).

O'Driscoll testified that his partner at the time, Ramon, felt threatened by the letter with the white powder and that the two went to the hospital, where they were humiliated and "treated like [they] were criminals." (Id. at 102:16-23). Further, these letters caused O'Driscoll "to go into a depression," experience more anxiety, and lose sleep. (Id. at 129:5-11).

### H. Plaintiff's Counsel

O'Driscoll has three attorneys. First, Andrew Mallory represents him in general matters and in the dog bite lawsuit.

(Id. at 10:10-16, 50:21-22, 52:5-53:4). Second, Bryant Dunivan represents O'Driscoll in this matter. (Id. at 2:5-8, 50:16-20). Third, Scott Tankel represents O'Driscoll in general matters and in the state court action with Arbor Grove. (Id. at 50:23-51:9).

O'Driscoll testified that Tankel has performed work for which he is requesting attorney's fees related to "collections". (Id. at 51:13-17). Plaintiff did not disclose Tankel as counsel for which attorney's fees were being claimed within his Initial Disclosures or in his Answers to Interrogatories. (Id. at Ex. E & F).

## I.   Parties' Unopposed Motion as to Consent to Liability and Issues Still to Be Determined

On April 25, 2023, the parties filed an unopposed motion as to consent to liability and issues still to be determined. (Doc. # 32). In this motion, RPM admitted liability under both counts of the amended complaint as to the May 17, 2022, and June 17, 2022, correspondence to O'Driscoll. Arbor Grove "stipulate[d] to liability conditional upon the Court's determination that the Association can be liable under the FCCPA as a 'debt collector.'" (Id. at 2). The Court later determined that Arbor Grove is a person capable of violating

16

the FCCPA. (Doc. # 34 at 7). However, the Court denied the motion as "it is not this Court's practice to finalize an interim agreement when the parties are still litigating claims and before judgment has been entered." (Doc. # 35).

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing

the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846

18

F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. __Analysis__

### A.   __Propriety of the Fines Imposed by Arbor Grove__

Arbor Grove and RPM first assert that summary judgment should be granted in their favor on O'Driscoll's claim that they violated Florida Statute Section 559.72(9).[3] (Doc. # 44 at 16).

Section 559.72(9) of the FCCPA provides that, "[i]n collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of

---

[3] This argument also references O'Driscoll's claim pursuant to Florida Statute Section 559.72(18). (Doc. # 44 at 16). However, as the remainder of this section of the Motion only references caselaw related to Section 559.72(9), the Court will not consider whether Arbor Grove and RPM have met their burden with regards to Section 559.72(18). Arbor Grove and RPM also mention in passing O'Driscoll's FDCPA claims. (Id. at 18). As argument related to this statute was not included in this section, the Court will also not consider this argument as it applies to these claims.

some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). "[T]o establish a violation under this subsection of the FCCPA, it must be shown that either a debt which did not exist was being asserted or that a legal right which did not exist was being asserted." Ortiz v. Accts. Receivable Mgmt., Inc., No. 09-80124-CIV, 2010 WL 547910, at *3 (S.D. Fla. Feb. 12, 2010). "[A] party must allege knowledge of intent by the debt collectors in order to state a cause of action" under this provision. Longo v. Campus Advantage, Inc., 588 F. Supp. 3d 1286, 1300 (M.D. Fla. 2022). "To be liable for a violation, a person must have actual knowledge that the legal right it was asserting did not exist." Johnston v. Mitchell & Lynn Judgement Recovery Sols., LLC, No. 8:23-cv-38-CEH-AEP, 2023 WL 7411338, at *4 (M.D. Fla. Oct. 17, 2023), report and recommendation adopted, No. 8:23-cv-38-CEH-AEP, 2023 WL 8004432 (M.D. Fla. Nov. 17, 2023).

In the amended complaint, O'Driscoll alleges that Arbor Grove and RPM violated Section 559.72(9) by (1) "asserting the existence of a legal right to collect the debt, or a portion thereof, when Defendant knew the right to collect

said debt did not exist through written correspondence sent on May 17, 2022 and June 17, 2022," (2) "asserting the existence of a legal right to collect the debt, namely threatening 'additional collection activities,' when Defendant knew the right to collect said debt did not exist under the declaration and Fla. Stat. 718.303 with respect to the fine through written correspondence sent on May 17, 2022 and June 17, 2022," and (3) "including language in its initial communication, through counsel, that sought a settlement of the amounts in question without providing written notice that no litigation could ensue with respect to the debt in question through written correspondence sent on May 17, 2022 and June 17, 2022." (Doc. # 9 at ¶¶ 48-50).

Arbor Grove and RPM argue that O'Driscoll cannot succeed on this claim as to the fines that Arbor Grove sought to impose upon O'Driscoll because he cannot demonstrate that "the fines were illegitimate or that the Association had actual knowledge that the right did not exist." (Doc. # 44 at 17). Arbor Grove and RPM's argument centers on the communications about fines imposed in October 2021 and May 2022, informing O'Driscoll of violations and compelling him

21

to attend hearings held about whether to impose fines for his conduct. (Id.); (Doc. # 44-1 at Ex. B at 1, 7). Therefore, Arbor Grove and RPM's argument appears to only address the first alleged violation of Section 559.72(9) stated in the amended complaint.

As an initial note, O'Driscoll appears to confirm that he is not challenging the validity of the fines issued by Arbor Grove. See (Doc. # 45 at 9) ("[T]he fine is not at issue in this litigation. . . . [T]his cause of action arises out of attempts to collect attorney's fees which accrued presumably during the pendency of the injunctive relief claim filed by the Defendant."). Further, the Court notes that Plaintiff's amended complaint includes specific references to the "correspondence sent on May 17, 2022 and June 17, 2022" in each allegation that Defendants violated the FCCPA. (Doc. # 9 at ¶¶ 48-50). While the May and June 2022 correspondence states that O'Driscoll owed the two fines, information regarding the fines and the process by which Arbor Grove imposed them was included in earlier letters. (Doc. # 44-1 at Ex. B). Even so, the Court acknowledges that the amended complaint's discussion of the fines and issues related to

22

their assessment, such as lack of notice (Doc. # 9 at ¶ 36), makes it unclear whether O'Driscoll is seeking relief for violations related to the imposition of the fines. Therefore, the Court will address this issue.

As to the $300 fine, the Court notes that no genuine dispute of material fact exists. O'Driscoll cannot demonstrate that the fine was illegitimate or that Arbor Grove and RPM knew it was illegitimate, and thus this fine was not imposed in violation of Section 559.72(9). O'Driscoll admits in his amended complaint that Arbor Grove "has the right to fine, upon reasonable notice and an opportunity to be heard." (Id. at ¶ 32). This corresponds with Arbor Grove's Declaration, which provides:

> In the event a Unit Owner or occupant . . . fails to observe and perform all of the provisions of the Declaration, the By-Laws, the Articles of Incorporation of the Association, applicable rules and regulations, or any other agreement, document or instrument affecting the Condominium Property in the manner required, the Association shall have the right to . . . impose any applicable fines . . . .

(Doc. # 44-1 at Ex. A at ¶ 19.3).

O'Driscoll's testimony provides conflicting evidence about whether he received written correspondence informing him that the $300 fine would be imposed and providing him an

23

opportunity to attend a hearing. However, O'Driscoll's amended complaint states that "Arbor Grove alleged violations of rules in September and October of 2021." (Doc. # 9 at ¶ 34). Further, the amended complaint acknowledges that, prior to determining that O'Driscoll had violated the rules, Arbor Grove sent written correspondence, including a September 13, 2021, letter that compelled O'Driscoll to attend a hearing. (Id. at ¶ 35). O'Driscoll then alleged that "no adequate notice was given, [so] any fine would be impermissible." (Id. at ¶ 36).

The September 13, 2021, letter, provides timely notice of the fine. While the body of the letter does state that the hearing has been scheduled on "[[hearing_date]] at 5:15 p.m.," the letter also notes elsewhere that the hearing date was October 5, 2021. (Doc. # 44-1 at Ex. B). This date was over fourteen days after the notice, and therefore, in compliance with Florida Statute Section 718.303(3)(b), which states that "[a] fine . . . levied by the board of administration may not be imposed unless the board first provides at least 14 days' written notice to the unit owner . . . and an opportunity for a hearing before a committee .

. . ." Fla. Stat. § 718.303(3)(b). Therefore, no genuine dispute of material fact exists that the $300 fine was properly imposed in compliance with Arbor Grove's declarations and Florida law. As far as O'Driscoll seeks damages for the imposition of the $300 fine sought by Arbor Grove and RPM, summary judgment is granted for Defendants on this issue.

Similarly, there is no genuine dispute of material fact regarding the propriety of the $200 fine. True, as with the previous fine, O'Driscoll testified that he did not receive written notice that the fine would be imposed and that a hearing would be held on the matter. (Doc. # 44-1 at Ex. D at 18:21-19:3). Additionally, the exhibits attached to O'Driscoll's response to interrogatories in this case do not include the March 30, 2022, letter. (Id. at Ex. D at Ex. 3). In O'Driscoll's response to the Motion, however, he acknowledges that "[o]n March 30, 2022, Defendant RPM, on behalf of Arbor Grove, sent written correspondence to Plaintiff." (Doc. # 45 at ¶ 7). Because O'Driscoll admits that he was sent the letter informing him of the imposition of the fine and that Arbor Grove would hold a hearing on the

matter, no genuine dispute of material fact exists that $200 fine was properly imposed. Therefore, as far as O'Driscoll is seeking damages for the imposition of the $200 fine, summary judgment is granted on this issue in favor of Defendants.

### B. Attorney's Fees Related to State Court Lawsuit Seeking Injunction

Arbor Grove and RPM also assert that O'Driscoll should not be permitted to recover damages based on the attorney's fees Arbor Grove incurred in the state court lawsuit seeking an injunction against O'Driscoll and the attorney's fees O'Driscoll incurred in defending himself in that action.[4] (Doc. # 44 at 18-19).

As a preliminary matter, the Court notes that the argument as it pertains to Arbor Grove's attorney's fees resembles that raised in Defendants' motion to dismiss. (Doc. # 34 at 7-9). At that time, the Court denied the motion as to this issue, as the May 17, 2022, and June 17, 2022, letters

---

[4] Defendants also highlight that O'Driscoll stated that he was seeking "[a]ttorney's fees and costs related to the allegations of this action - $18,270" in his Initial Disclosures in this case. (Doc. # 44 at 18); (Doc. # 44-1 at Ex. E at 3). However, this response does not clearly indicate the litigation or other work for which these attorney's fees were incurred.

list $2,975 in "attorney's fees, per manager" as part of the balance O'Driscoll owed Arbor Grove "in connection with his unpaid HOA fines and assessments." (Id. at 9).

The Court notes that, as in the motion to dismiss and response, the parties' arguments on this issue are not a model of clarity. Further, Defendants do not cite any caselaw in support of their argument.

At this juncture, the Court determines that a genuine dispute of material fact remains as to whether the attorney's fees Arbor Grove incurred in pursuing the state court lawsuit for an injunction qualify as consumer debts under the FCCPA and FDCPA.

The complaint in the state court lawsuit alleged that "[O'Driscoll] is causing a substantial, unreasonable interference with the unit owners' and residents' rights to use and enjoy their condominium property and the unit owners and residents cannot use the condominium property or their unit in a manner that was intended for residential use." (Doc. # 44-1 at Ex. G). Further, that complaint requested that the state court "temporarily and permanently enjoin [O'Driscoll] from the conduct . . . [and] to stop the nuisance." (Id.).

27

The complaint does not mention or seek to recover the fees that Defendants sought to collect from O'Driscoll. Instead, it only seeks injunctive relief and attorney's fees related to Arbor Grove's pursuit of the action. (Id.).

But there is no indication that the fees Arbor Grove and RPM seek to recover were awarded by the state court. Instead, they highlight that Arbor Grove has the authority to "to sue in a court of law for damages, and to charge the Unit Owner for the sums necessary to do whatever work is required to put the Unit Owner or Unit in compliance." (Id. at Ex. A at ¶ 19.3); (Doc. # 44 at 19). Arbor Grove and RPM then included the value of the attorney's fees in the balance sought from O'Driscoll, along with other fees related to his ownership of property within the Arbor Grove community. (Doc. # 9-1). In short, these are the attorney's fees Arbor Grove and RPM incurred in the state court action but were, apparently, never awarded by the state court.

Defendants argue that the attorney's fees are not a consumer debt, as they do not arise from a consumer transaction. (Doc. # 44 at 18-19). The FCCPA defines "consumer debt" as "any obligation or alleged obligation of a consumer

28

to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." Fla. Stat. § 559.55(6). This Court acknowledges that the attorney's fees were incurred in pursuing a state court lawsuit for an injunction against O'Driscoll. However, since Arbor Grove appears to assert that it may recover these fees pursuant to Arbor Grove's declaration and attempted to do so through the same avenue by which O'Driscoll pays bills and fees related to his ownership of the condominium unit, a genuine dispute of material fact remains as to whether the attorney's fees are a consumer debt. See Agrelo v. Affinity Mgmt. Servs., LLC, 841 F.3d 944, 952 (11th Cir. 2016) ("By agreeing to the terms of the governing documents, the homeowners acknowledged that a failure to comply with HOA requirements could result in a fine that would be deemed and treated as an individual assessment. Thus, their obligation to pay an assessment for a claimed breach of the governing documents arose out of an underlying consumer transaction.").

Second, Defendants state that O'Driscoll confirmed that he was seeking "costs for the defense of the state court injunction." (Doc. # 44 at 18). Upon review of the sources cited, O'Driscoll appears to have testified that he was only seeking attorney's fees for Mr. Tankel "as [they] relate[] to collection." (Doc. # 44-1 at Ex. D at 51:13-18). Therefore, O'Driscoll does not explicitly state that he is seeking recovery of attorney's fees for the state court case in this testimony. Yet, O'Driscoll's response to the motion for partial summary judgment confirms that he is seeking damages for the defense of the state court action. (Doc. # 45 at 13-14).

As to these attorney's fees, O'Driscoll is correct that courts often allow parties to recover "attorneys' fees actually incurred in defending the underlying collection action" under the FDCPA. (Doc. # 45 at 13) (quoting Gordon v. S. Credit Bureau Corp., 5:19-CV-63 (MTT), 2019 WL 3937630, at *3 n.5 (M.D. Ga. Aug. 20, 2019)). However, the state court action seeking an injunction was not a collection action. Instead of seeking to recover a debt for past violations of Arbor Grove's rules, it sought to prevent O'Driscoll from

30

committing future violations. Therefore, O'Driscoll may not recover attorney's fees for the defense of this action.

In sum, a genuine dispute of material fact remains regarding whether damages related to attorney's fees Arbor Grove incurred pursuing the state court action are recoverable in this lawsuit. However, summary judgment is granted as to whether O'Driscoll can recover attorney's fees for his defense in the state court action seeking an injunction.

### C.   Limitations on Statutory Damages

Arbor Grove and RPM further argue that summary judgment should be granted as to the maximum amount of statutory damages that O'Driscoll can recover under the FCCPA, if they are determined to have violated the statute. (Doc. # 44 at 19-20). Specifically, they argue that, if O'Driscoll prevails on his FCCPA count, the statutory damages imposed upon both defendants should not exceed $1,000. (Id.). In his amended complaint, O'Driscoll requests that the Court award "[t]he maximum amount of statutory . . . damages provided under Fla. Stat. § 559.77(2) as to each Defendant." (Doc. # 9 at ¶ 52(b)).

Florida Statute  Section 559.77(2) states that "**[a]ny person** who fails to comply with any provision of [Section] 559.72 is liable for . . . additional statutory damages as the court may allow, but not exceeding $1,000 . . . ." Fla. Stat. § 559.77(2) (emphasis added). Defendants are correct that courts within this circuit have held that statutory damages are limited to $1,000 per action in cases with only one defendant. E.g., Tacoronte v. Tate & Kirlin Assocs., No. 6:13-cv-331-RBD-DAB, 2013 WL 5970720, at *2 (M.D. Fla. Nov. 8, 2013) ("The FCCPA also authorizes a statutory award of $1,000 per plaintiff in a class action[]not per violation. Under these provisions, courts properly decline to multiply the $1,000 statutory award by each violation alleged in a single count under the FCCPA." (citing Lara v. Specialized Loan Servicing, LLC, No. 1:12-cv-24405-UU, 2013 WL 4804387, at *3 (S.D. Fla. Sept. 6, 2013))). However, when there are multiple defendants, courts allow plaintiffs to recover statutory damages of up to $1,000 per defendant. E.g., Gamboa v. Carruthers, No, 8:10-cv-1473-SCB-MAP, 2010 WL 4823671, at *1 (M.D. Fla. Nov. 19, 2010) ("[T]he Court finds that awarding Plaintiff the maximum statutory damages per Defendant is

32

appropriate . . . .”); <u>Brown v. Kopolow</u>, No. 10-80593-CIV, 2011 WL 283253, at *1 (S.D. Fla. Jan. 25, 2011) (“Recovery of statutory damages under the FCCPA is . . . limited to $1,000 per defendant per adverse adjudication.”).

Therefore, summary judgment is denied as to this argument.

### D.  **Emotional Damages**

Defendants also argue that they should be granted summary judgment on any emotional damages claimed by O'Driscoll. (Doc. # 44 at 20-24). Defendants argue that the “lack of documented credible proof,” such as medical records, and conflicting testimony by O'Driscoll on this issue warrant summary judgment. (<u>Id.</u> at 24).

A plaintiff can recover damages for emotional distress under both the FCCPA and the FDCPA. <u>Minnifield v. Johnson & Freedman, LLC</u>, 448 F. App'x 914, 916 (11th Cir. 2011); <u>Fini v. Dish Network, L.L.C.</u>, 955 F. Supp. 2d 1288, 1299-1300 (M.D. Fla. 2013). “Emotional distress must have a severe impact on the sufferer to justify an award of actual damages.” <u>Alecca v. AMG Managing Partners, LLC</u>, No. 3:13-cv-163-BJD-PDB, 2014 WL 2987702, at *2 (M.D. Fla. July 2, 2014) (citing <u>Titus v.</u>

33

Com. Recovery Sys., Inc., 8:13-cv-567-JDW-AEP, 2014 WL 55016, at *2 (M.D. Fla. Jan. 7, 2014)). "To find evidence of severe impact, courts look for medically significant physical symptoms of the underlying mental anguish, or a combination of genuine fear, humiliation, and anxiety." Id. (citing Crespo v. Brachfeld Law Grp., No. 11-60569-CIV, 2011 WL 4527804, at *5 (S.D. Fla. Sept. 28, 2011). The burden lies with the plaintiff to establish emotional distress. See Baumann v. Prober & Raphael, No. 6:15-cv-1951-PGB-GJK, 2017 WL 10350673, at *3 (M.D. Fla. May 17, 2017) (declining to award damages for emotional pain as the plaintiff "provide[d] no evidence or any other explanation showing where [the] damages come from, how they were calculated, or how they were caused by [the defendant's] conduct").

First, Arbor Grove and RPM argue that O'Driscoll should not recover emotional damages as "[m]any courts have declined to award damages for emotional distress where the plaintiff's testimony was not supported by medical records." (Doc. # 44 at 21); see Lane v. Accredited Collection Agency Inc., No. 6:13-cv-530-GKS-GJK, 2014 WL 1685677, at *8 (M.D. Fla. Apr. 28, 2014) (determining that plaintiff had not suffered actual

34

damages, despite testimony that the plaintiff had suffered nervousness, anxiety, and sleeplessness). They also cite several cases where courts have declined to award damages for emotional distress even when the defendant had engaged in serious misconduct that qualified as a violation of the FDCPA. (Doc. # 44 at 21-22); e.g., Jordan v. Collection Servs., Inc., No. 97-600-CA-01, 2001 WL 959031 (Fla. Cir. Ct. Apr. 5, 2001) (declining to award damages for mental anguish even when Defendant's employee threatened "to refuse to admit Plaintiffs or their ill child [to the hospital] if they did not pay their hospital bill").

However, medical records and testimony are not always required for plaintiffs to establish damages for emotional distress. See Goodin v. Bank of Am., N.A., 114 F. Supp. 3d 1197, 1211-13 (awarding damages for emotional distress despite lack of medical records). Thus, the lack of medical records here does not automatically preclude such damages.

Defendants further argue that O'Driscoll's testimony regarding this issue conflicts such that "no factfinder would be able to discern which conflicting testimony of the Plaintiff may be credible," nor distinguish which symptoms

were related to the mailings rather than the other occurrences. (Doc. # 44 at 24). As noted above, "[e]motional distress must have a severe impact on the sufferer to justify an award of actual damages." Alecca, 2014 WL 2987702, at *2. The Court acknowledges that O'Driscoll's evidence regarding emotional distress conflicts, as the harm he claims overlaps significantly with the harm claimed from the dog attack and from receiving letters from the Concerned Residents of Arbor Grove. (Doc. # 44-1 at Ex. D at 62:14-64:10, 113:14-23, 57:9-17, 108:14-23, 129:5-11); (Id. at Ex. K); (Id. at Ex. L at 22:1-4, 24:4-10, 82:20-83:2, 85:6-8). Nevertheless, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge,' so they are not appropriate determinations to make at the summary judgment stage." Butler v. Gualtieri, 41 F.4th 1329, 1334 (11th Cir. 2022) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." Miller v. Harget, 458 F.3d 1251, 1256

(11th Cir. 2006). O'Driscoll has provided some evidence claiming that he suffered additional emotional distress as a result of the correspondence. E.g., (Doc. # 44-1 at Ex. D at 62:14-64:10) (testifying that the communications from Arbor Grove and RPM exacerbated his mental health issues, requiring both different medication and higher doses). Therefore, the Court will not grant summary judgment on this issue.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Arbor Grove Condominium Association, Inc.'s and Resource Property Management, Inc.'s Motion for Partial Summary Judgment (Doc. # 44) is **GRANTED** in part and **DENIED** in part.

(2) Summary judgment is granted in favor of Arbor Grove and RPM and against Plaintiff William O'Driscoll as to whether Arbor Grove and RPM properly imposed the $300 and $200 fines, and whether O'Driscoll can recover attorney's fees for his defense during the state court action seeking an injunction against him. The case will proceed to trial on all other issues.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u>

day of February, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE